**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOANNE M. CREELMAN, | : | |
| Plaintiff | : | CIVIL ACTION NO. 4:11-CV-00074 |
| vs. | : | (Complaint Filed 1/11/11) |
| MICHAEL ASTRUE, COMMISSIONER OF SOCIAL SOCIAL SECURITY, | : | (Judge Caputo) |
| Defendant | : | |

**MEMORANDUM**

**BACKGROUND**

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Joanne M. Creelman's claim for social security disability insurance benefits and supplemental security income benefits.

On July 2, 2008, Creelman filed protectively[1] an application for disability insurance benefits and an application for supplemental security income benefits. Tr. 13, 56-64, 73 and 121.[2] The applications were initially denied by the Bureau of Disability Determination[3] on April 9, 2009. Tr. 13, 36 and 46-51. On May 13, 2009, Creelman

---

[1]Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

[2]References to "Tr.__" are to pages of the administrative record filed by the Defendant as part of his Answer on March 21, 2011.

[3]The Bureau of Disability Determination is a state agency which initially evaluates
(continued...)

requested a hearing before an administrative law judge. Tr. 44-45.  After about 11 months had passed, a hearing was held on April 16, 2010. Tr. 357-398.  On May 24, 2010, the administrative law judge issued a decision denying Creelman's applications. Tr. 13-23.  On June 28, 2010, Creelman filed a request for review with the Appeals Council and on November 15, 2010, the Appeals Council concluded that there was no basis upon which to grant Creelman's request. Tr. 5-9. Thus, the administrative law judge's decision stood as the final decision of the Commissioner.

Creelman then filed a complaint in this court on January 11, 2011.  Supporting and opposing briefs were submitted and the appeal[4] became ripe for disposition on August 25, 2011,  when Creelman elected not to file a reply brief.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes.  The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured."  It is undisputed that Creelman meets the insured status requirements of the Social Security Act through June 30, 2012. Tr. 13, 15 and 64.

Supplemental security income is a federal income supplement program funded by general tax revenues (not social security taxes).  It is designed to help aged, blind or

---

[3](...continued)
applications for disability insurance and supplemental security income  benefits on behalf of the Social Security Administration.  Tr. 47.

[4]Under the Local Rules of Court "[a] civil action brought to review a decision of the Social Security Administration denying a claim for social security disability benefits" is "adjudicated as an appeal."  M.D.Pa. Local Rule 83.40.1.

other disabled individuals who have little or no income.

Creelman, who was born in the United States on June 17, 1968, graduated from high school and can read, write, speak and understand the English language and perform basic mathematical functions. Tr. 54, 56, 64, 105, 108 and 367. During Creelman's elementary and secondary schooling, she attended regular education classes. Tr. 115. After graduating from high school, Creelman completed 1 year of college courses. Id.

Creelman has a lengthy history of work and earnings and held several jobs which can be considered past relevant employment.[5] Creelman's past relevant work involved (1) semiskilled, sedentary work[6] as a receptionist, (2) semiskilled, medium factory

---

[5] Past relevant employment in the present case means work performed by Creelman during the 15 years prior to the date her claim for benefits was adjudicated by the Commissioner. 20 C.F.R. §§ 404.1560, 404.1565, 416.960 and 416.965.

[6] The terms sedentary, light, medium and heavy work are defined in the regulations of the Social Security Administration as follows:

> (a) *Sedentary work*. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.
>
> (b) *Light work*. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the

(continued...)

3

work as a machine operator (slitting electronic film) and packaging the film, and (3) skilled, light work as a photographer (primarily weddings). Tr. 22, 110, 125-135, 368 and 388-391. Creelman testified at the administrative hearing held on April 16, 2010, that she quit working as a photographer in October, 2009. Tr. 368.

Records of the Social Security Administration reveal that Creelman had earnings in the years 1984 through 2008. Tr. 65. The administrative record does not contain an indication of Creelman's earnings during 2009. In 2008 her earnings were $8616.00. Id. From 1994 through 2008, Creelman's annual earnings ranged from a low in 2003 of $161.00 to a high in 2000 of $40,870.95. Id. Creelman's total earnings from 1984 through 2008 were $275,686.68. Id.

Creelman alleges that she became disabled on January 1, 2008, because of

---

[6](...continued)
  ability to do substantially all of these activities.
  If someone can do light work, we determine that
  he or she can also do sedentary work, unless there
  are additional limiting factors such as loss of fine
  dexterity or inability to sit for long periods of time.

  (c) *Medium work*. Medium work involves lifting no
  more than 50 pounds at a time with frequent lifting or
  carrying of objects weighing up to 25 pounds. If
  someone can do medium work, we determine that
  he or she can do sedentary and light work.

  (d) *Heavy work*. Heavy work involves lifting no more
  than 100 pounds at a time with frequent lifting or
  carrying of objects weighing up to 50 pounds. If
  someone can do heavy work, we determine that he
  or she can also do medium, light, and sedentary work.

20 C.F.R. §§ 404.1567 and 416.967.

degenerative disc disease of the lumbar spine with facet arthropathy,[7] bilateral plantar calcaneous spurs,[8] asthma by history, arthritis, high blood pressure, status post gallbladder surgery, gastroesophageal reflux disease,  neck pain, back pain, left hip pain,  leg pain, morbid obesity, fibromyalgia, anxiety and depression.  Tr. 8, 46, 56, 109 and 362; Doc. 11, Plaintiff's Brief, p. 1.   Creelman contends she is disabled as a result of pain, her inability to walk and depression.[9] Tr. 372-373.

As mentioned earlier, Creelman worked as a photographer through October, 2009, about 20 months past her alleged disability onset date. During that time she made contracts; met with clients; edited and developed photographs; produced photo albums; attended two to three bridal shows each year; performed the bookkeeping and marketing; and handled all management decisions. 117-118 and 369-371.  For each wedding, Creelman spent almost six hours on her feet and 14 to 16 hours taking and producing

---

[7] The facet joints are in the back of the spine and act like hinges for the vertebrae. There are two superior (top) and two inferior (bottom) portions to each facet joint called the superior and inferior articular processes. "The facet joints connect the posterior elements of the [vertebrae] to one another. Like the bones that form other joints in the human body, such as the hip, knee or elbow, the articular surfaces of the facet joints are covered by a layer of smooth cartilage, surrounded by a strong capsule of ligaments, and lubricated by synovial fluid. Just like the hip and the knee, the facet joints can also become arthritic and painful, and they can be a source of back pain.  The pain and discomfort that is caused by degeneration and arthritis of this part of the spine is called facet arthropathy, which simply means a disease or abnormality of the facet joints." Facet Arthropathy, Back.com, http://www.back.com/causes-mechanical-facet.html (Last accessed May 14, 2012).

[8] A calcaneous spur is a bony projection on the sole region of the heel bone.

[9] Creelman  was 39 years of age on her alleged disability onset date and considered a "younger individual" under the Social Security regulations. 20 C.F.R. § 404.1563(c). The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). Younger individuals can more readily adjust to other work. Id.

photos. Tr. 117 and 368-369. Her earnings of $8616.00 in 2008 exceeded 14 of the previous 24 years' earnings. Tr. 65. Creelman photographed 13 weddings in 2009 with an assistant's help. Tr. 119 and 160.

After the alleged disability onset date, the record reveals that Creelman lived in a two-story house with her two sons and her husband, who she married in January 2010 after dating for a year. Tr. 364-365 and 374. Creelman's daily activities included taking a shower, using the computer, watching television, running errands, preparing one to two daily meals, and doing laundry. Tr. 137-139. Creelman cared for her personal needs independently, had the ability to drive, went places alone, shopped for groceries, paid bills, handled a savings account and checkbook, and counted change. Tr. 138-140. Creelman socialized with her sister by telephone and emailed friends daily. Tr. 141. Creelman denied problems with talking, hearing, seeing, understanding, following written and oral instructions, using her hands, and getting along with others. Tr. 142. In January 2009, a social security field office employee observed during a face-to-face interview that Creelman had no difficulty concentrating, sitting, standing or walking. Tr. 121-124. Creelman at the administrative hearing held in April, 2010, admitted that she could lift 10 pounds, that she could stand or walk 10 minutes, and that she could sit but needs to change positions after 20 minutes. . Tr. 379-380. As mentioned Creelman has not worked since October, 2009.

For the reasons set forth below we will affirm the decision of the Commissioner denying Creelman's applications for disability insurance and supplemental security income benefits.

**STANDARD OF REVIEW**

When considering a social security appeal, we have plenary review of all legal

6

issues decided by the Commissioner.  See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).  However, our review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence."  Id.; Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence.");  Keefe v. Shalala, 71 F.3d 1060, 1062 (2d Cir. 1995); Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001);  Martin v. Sullivan, 894 F.2d 1520, 1529 & 1529 n.11 (11th Cir. 1990).

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999).  Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance.  Brown, 845 F.2d at 1213.  In an adequately developed factual record substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence

does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-707. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**SEQUENTIAL EVALUATION PROCESS**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for

>him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner utilizes a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. §404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider, in sequence, whether a claimant (1) is engaging in substantial gainful activity,[10] (2) has an impairment that is severe or a combination of impairments that is severe,[11] (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment,[12] (4) has the residual functional capacity to return to his or her past work and

---

[10] If the claimant is engaging in substantial gainful activity, the claimant is not disabled and the sequential evaluation proceeds no further.

[11] The determination of whether a claimant has any severe impairments, at step two of the sequential evaluation process, is a threshold test. 20 C.F.R. §§ 404.1520(c) and 416.920(c). If a claimant has no impairment or combination of impairments which significantly limits the claimant's physical or mental abilities to perform basic work activities, the claimant is "not disabled" and the evaluation process ends at step two. Id. If a claimant has any severe impairments, the evaluation process continues. 20 C.F.R. §§ 404.1520(d)-(g) and 416.920(d)-(g). Furthermore, all medically determinable impairments, severe and non-severe, are considered in the subsequent steps of the sequential evaluation process. 20 C.F.R. §§ 404.1523, 404.1545(a)(2), 416.923 and 416.945(a)(2).

[12] If the claimant has an impairment or combination of impairments that meets or equals a listed impairment, the claimant is disabled. If the claimant does not have an impairment or combination of impairments that meets or equals a listed impairment, the sequential evaluation process proceeds to the next step. 20 C.F.R. § 404.1525 explains that the listing of impairments "describes for each of the major body systems impairments that [are] consider[ed] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." Section 404.1525
(continued...)

(5) if not, whether he or she can perform other work in the national economy. Id.  As part of step four the administrative law judge must determine the claimant's residual functional capacity. Id.[13]

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**DISCUSSION**

The administrative law judge at step one of the sequential evaluation process found that Creelman had not engaged in substantial gainful work activity since January 1, 2008, the alleged disability onset date. Tr. 15.  Specifically, the administrative law judge stated in part as follows: "If a claimant is engaged in substantial gainful activity, the claimant will be found not disabled regardless of medical condition, age, education, or work experience[.] Substantial gainful activity is work activity that is both substantial and gainful.

---

[12](...continued)
also explains that if an impairment does not meet or medically equal the criteria of a listing an applicant for benefits may still be found disabled at a later step in the sequential evaluation process.

[13]If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

10

Substantial work activity is defined as work activity that involves doing significant physical or mental activities. Work can be considered substantial even if it is done on a part-time basis or if less money is earned or work responsibilities are lessened from previous employment. Gainful work activity is the kind of work usually done for pay or profit, whether or not a profit is realized[.] The claimant testified that she worked after the alleged disability onset date and the earnings report reflects earnings in 2008 of $8616, but the undersigned administrative law judge finds that this work activity does not rise to the level of substantial gainful activity[.]"[14] Id.

At step two of the sequential evaluation process, the administrative law judge found that Creelman had the following severe impairments: "degenerative disc disease of the lumbar spine with facet arthropathy, bilateral plantar calcaneous spurs, asthma by history, morbid obesity, and depression." Tr. 16. The administrative law judge also found that Creelman had the non-severe impairments of anxiety, status post gallbladder surgery, gastroesophageal reflux disease, high blood pressure, and fibromyalgia by history. Id.

At step three of the sequential evaluation process the administrative law judge found that Creelman's impairments did not individually or in combination meet or equal a listed impairment. Tr. 16-17.

At step four of the sequential evaluation process the administrative law judge

---

[14] A claimant's earnings must rise to a certain level to be considered substantial gainful work activity. "To be eligible for disability benefits, a person must be able to engage in substantial gainful activity (SGA). A person who is earning more than a certain monthly amount . . . is ordinarily considered to be engaging in substantial gainful activity." Substantial Gainful Activity, Automatic Determinations, Social Security Online, http://www.ssa.gov/oact/COLA/sga.html (Last accessed May 15, 2012). In 2008 the amount for a non-blind individual was $940 per month and in 2009 the amount was $980 per month. Id.

found that Creelman could not perform her past relevant semiskilled, sedentary work as a receptionist, semiskilled, medium work as a factory worker, and skilled, light work as a photographer but that she had the residual functional capacity to perform a limited range of unskilled, sedentary work. Tr. 17-22.  Specifically, the administrative law judge found that Creelman could perform unskilled, sedentary work which was

> limited to occupations that permit a sit or stand option at will.  The claimant must avoid repetitive use of her lower extremity that might aggravate her back pain; exposure to hazards such as dangerous machinery and unprotected heights; and occupations that require balancing, kneeling, crouching, crawling, and climbing ladders, ropes, and scaffolds.  The claimant may be engaged in occupations that require no more than occasional postural maneuvers such as stooping and climbing on ramps and stairs.  However, the claimant must also avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibration, and extreme dampness and humidity.  The claimant is limited to occupations that require no more than occasional feeling, pushing, and pulling with the lower extremities to include the operation of pedals.  Lastly, the claimant is limited to occupations requiring no more than simple, routine tasks not performed in a fast-paced production environment involving only simple, work-related decisions, and in general relatively few work place changes.

Tr. 17-18. In concluding that Creelman had the residual functional capacity to engage in this extremely limited range of unskilled, sedentary work, the administrative law judge relied on the opinion of Raphael Kon, M.D., who on March 19, 2009, examined Creelman on behalf of the Bureau of Disability Determination and prepared a report of the examination and completed a medical source statement of Creelman's physical ability to do work-related activities and a range of motion chart. Tr. 245-252.  The administrative law judge's residual functional capacity assessment is supported by Dr. Kon's report, medical source statement and range of motion chart. Id.   In fact the administrative law judge's residual functional capacity assessment contains greater limitations than the residual functional capacity

assessment of Dr. Kon. Id. The administrative law judge also relied on the April 9, 2009, physical residual functional capacity assessment of Leo P. Potera, M.D., who reviewed Creelman's medical records on behalf of the Bureau of Disability Determination. Tr. 263-269. Dr. Potera found that Creelman could engage in a limited range of light work. Id.

At step five, the administrative law judge based on a residual functional capacity of a limited range of sedentary work as described above and the testimony of a vocational expert found that Creelman had the ability to perform unskilled, sedentary work as a receptionist, telephone solicitor (non-sales) and a sorter in the clerical industry, and that there were a significant number of such jobs in the national, state and local economies. Tr. 23.

The administrative record in this case is 398 pages in length and we have thoroughly reviewed that record. The administrative law judge did an adequate job of reviewing Creelman's vocational history and medical records in her decision. Tr. 13-23. Furthermore, the brief submitted by the Commissioner sufficiently reviews the medical and vocational evidence in this case. Doc. 14, Brief of Defendant.

Creelman argues that the administrative law judge erred (1) when she failed to give significance to the opinion of Tahirul Hoda, M.D., Creelman's primary care physician, and Michael R. Lavin, M.D., Creelman's psychiatrist, and (2) when she failed to address Creelman's work history when analyzing Creelman's credibility. We find no merit in Creelman's arguments.

Initially it should be emphasized that no treating physician, including Dr. Hoda, provided a physical residual functional capacity assessment which conflicts with the assessment of the administrative law judge. Dr. Hoda did not provide any indication that

13

Creelman from the alleged disability onset date forward could not perform the limited range of sedentary work set by the administrative law judge.

Also, Dr. Lavin did not provide a mental function-by-function assessment which conflicts with the mental residual function capacity assessment of the administrative law judge. Dr. Lavin did not address whether Creelman was able to engage in occupations involving simple, routine tasks not performed in a fast-paced production environment, simple, work-related decisions, and in general relatively few work place changes.

Creelman places great emphasis on two Global Assessment of Functioning (GAF) scores of 50[15] set by Dr. Lavin on September 22 and October 19, 2009. Tr. 295-297 and 301. However, in the document dated September 22, 2009, where Dr. Lavin set a GAF score of 50, Dr. Lavin states that the "highest in past year is unknown" and he fails to mention that on January 14, 2009, he gave Creelman a GAF score of 55, representing moderate symptoms. Tr. 231. Furthermore, during an intake evaluation of Creelman on June 1, 2009, a mental status examination of Creelman revealed that her appearance was neat; her hygiene was good; her attention was on task; her affect was appropriate; her mood did exhibit depression and anxiety; her motor activity was calm; her thought processes

---

[15] The Diagnostic and Statistical Manual of Mental Disorders uses a multiaxial approach in diagnosing mental disorders. The GAF score allows a clinician to indicate his judgment of a person's overall psychological, social and occupational functioning, in order to assess the person's mental health illness. *Diagnostic and Statistical Manual of Mental Disorders* 3–32 (4th ed. 1994). A GAF score is set within a particular range if either the symptom severity or the level of functioning falls within that range. Id. The score is useful in planning treatment and predicting outcomes. Id. A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational or school functioning. Id. A GAF score of 51 to 60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. Id. A GAF score of 61 to 70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. Id.

were intact; she had no hallucination or delusions; she had mild impairment of immediate memory; her judgment was intact; she was oriented to person, place, time and purpose; her speech was rapid; her intelligence above average; and she had impulse control. Tr. 302-303. Creelman denied any suicidal or homicidal ideations, plan or intent. Tr. 303.

This is not a case where the administrative law judge ignored or failed to address the GAF scores. The administrative law judge specifically addressed the scores in her decision. Tr. 20.

There is no indication by Dr. Lavin that the GAF scores he assigned comported with an inability on Creelman's part to engage in the limited unskilled, sedentary work set by the administrative law judge. Also, there is no evidence that the GAF scores of 50 assigned by Dr. Lavin on two occasions represented Creelman's level of functioning over a continuous 12 month period.[16] Finally, we are satisfied that the administrative law judge appropriately accounted for Creelman's mental impairments by limiting her to unskilled work requiring no more than simple, routine tasks not performed in a fast-paced production environment and involving only simple work-related decisions and relatively few work place changes. These limitations demonstrate that the administrative law judge adequately considered Creelman's GAF scores of 50 and 55.

The social security regulations specify that the opinion of a treating physician may be accorded controlling weight only when it is well-supported by medically acceptable

---

[16] As stated earlier in this memorandum to receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A).

clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case. 20 C.F.R. § 404.1527(d)(2); SSR 96-2p. An impairment, whether physical or mental, must be established by "medical evidence consisting of signs, symptoms, and laboratory findings," and not just by the claimant's subjective statements. 20 C.F.R. § 404.1508 (2007). We have no opinion from Dr. Lavin regarding Creelman's work-related mental functioning other than the GAF scores of 50 on two occasions within a period of 28 days. Furthermore, Creelman's self-reported activities and abilities demonstrate that she was not mentally impaired to the point that she could not engage in any type of work. Creelman as stated earlier engaged in many activities, including caring for her personal needs independently, driving, shopping, paying bills, counting change and using a computer. Tr. 137-141. She also denied problems understanding and following written and spoken instructions. TR. 142. Under the circumstances, the administrative law judge appropriately considered Creelman's alleged mental limitations.

As for Creelman's physical limitation, the administrative law judge appropriately relied on the opinions of Dr. Kon and Dr. Potera. The administrative law judge's reliance on those two opinions was appropriate. See Chandler v. Commissioner of Soc. Sec., _F.3d._, 2011 WL 6062067 at *4 (3d Cir. Dec. 7. 2011)("Having found that the [state agency physician's] report was properly considered by the ALJ, we readily conclude that the ALJ's decision was supported by substantial evidence[.]"). The administrative law judge appropriately took into account Creelman's physical and mental limitations in the residual functional capacity assessment.

The administrative law judge stated that Creelman's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible to the extent

that they were inconsistent with the ability to perform a limited range of unskilled sedentary work. Tr. 17.  The administrative law judge was not required to accept Creelman's subjective claims regarding her physical and mental limitations. See Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983)(providing that credibility determinations as to a claimant's testimony regarding the claimant's limitations are for the administrative law judge to make).  It is well-established that "an [administrative law judge's] findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since [the administrative law judge] is charged with the duty of observing a witness's demeanor . . . ." Walters v. Commissioner of Social Sec., 127 f.3d 525, 531 (6th Cir. 1997); see also Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 801 (10th Cir. 1991)("We defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess the witness credibility.").  Because the administrative law judge observed Creelman when she testified at the hearing on April 16, 2010, the administrative law judge is the one best suited to assess the credibility of Creelman.

Creelman has also argued that the administrative law judge did not address her work history. While the administrative law judge did not discuss Creelman's work history specifically in the context of her credibility finding, she undoubtedly considered Creelman's work history in making her decision. The administrative law judge elicited detailed work history information from Creelman and the vocational expert at the administrative hearing. The transcript of the administrative hearing clearly reveals that the administrative law judge was cognizant of Creelman's 26-year work history.  At one point during the hearing counsel commenced going over Creelman's work history and the administrative law judge noted that the work history documents were in the record and that it was not necessary to go over the

work history during the hearing in such detail. Tr. 384. She further discussed Creelman's work history in her decision at steps one and four of the sequential evaluation process. The failure to address specifically Creelman's work history in the decision in the context of assessing Creelman's credibility was harmless error at most under the circumstances of this case. See Weary v. Astrue, Civil No. 10-896, slip op. at 40-41 (M.D.Pa. Dec. 15, 2010)(Muir, J.)(applying harmless error analysis); Boyd v. Astrue, Civil No. 11-600, slip op. at 25-26 & 28 (M.D. Pa. May 10, 2012)(Munley, J.).

Our review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. We will, therefore, pursuant to 42 U.S.C. § 405(g) affirm the decision of the Commissioner.

An appropriate order will be entered.

       s/A. Richard Caputo
A. RICHARD CAPUTO
United States District Judge

Dated: May 16, 2012